DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| United States of America, | ) | |
|---|---|---|
| | ) | CASE NO. 5:06 CR 0162 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Hakim Malik Ali, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the motion to suppress filed by defendant Hakim Malik Ali (Doc. No. 69), the government's brief in opposition (Doc. No. 79), and defendant's reply (Doc. No. 95). For the reasons discussed below, the motion is DENIED.

**I.  INTRODUCTION**

Defendant seeks to suppress all evidence obtained following the search of the premises at 6967 Deer Trail NE, Canton, Ohio on March 9, 2006.  He argues, first, that the affidavit filed in support of the search warrant application failed to establish probable cause to believe that fruits, evidence and instrumentalities of crimes would be contained in the residence and, second, that the executing officers failed to comply with the knock and announce requirement.  The first issue is purely a legal question; the second was to be the subject of an evidentiary hearing conducted on June 8, 2006.  When the Court convened that hearing, the defendant withdrew his "knock and announce" argument.  Therefore, the Court need now only decide the legal question of the sufficiency of the affidavit to support the warrant to search Ali's residence.

(5:06 CR 0162)

## II.  BACKGROUND

On March 6, 2006, Magistrate Judge James Gallas signed a search warrant for premises at 6967 Deer Trail NE, Canton, Ohio 44721.  The warrant in question was based on the affidavit of Special Agent Mark McMurtry.  This affidavit was 54 pages long and consisted of 114 numbered paragraphs outlining a very lengthy narcotics investigation, beginning in July 2003, which identified one Ronald Dede, a co-defendant here, as being involved in the sale and distribution of cocaine in the Canton area.  The affidavit outlined in considerable detail facts and circumstances to support the assertion that Dede, Ali, and five other defendants were engaged in a conspiracy to distribute cocaine and that they intentionally distributed and possessed with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 846.

## III.  DISCUSSION

**A.  Probable Cause and Sufficiency of the Affidavit**

The Fourth Amendment to the U.S. Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  U.S. Const. amend. IV.

In <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), the Supreme Court adopted a "totality of the circumstances" test for judging the sufficiency of an affidavit supporting an application for a search warrant.  The Court stated:

> [t]he task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

2

(5:06 CR 0162)

Id. at 238.  The Gates Court explained that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." Id.

A magistrate judge's finding of probable cause for issuance of a warrant is afforded "great deference." United States v. Leake, 998 F.2d 1359, 1363 (6th Cir. 1993).  The question is "whether, in light of the totality of the circumstances, the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing[.]" United States v. Sonagere, 30 F.3d 51, 53 (6th Cir.) (internal quotation marks omitted), cert. denied, 513 U.S. 1009 (1994).

The issue of the sufficiency of an affidavit was raised in United States v. Jones, 159 F.3d 969 (6th Cir. 1998).  There the defendant asserted that the search of his residence was based on a warrant which "failed to establish probable cause of a nexus between crack cocaine trafficking and the house searched." Id. at 974.  The court disagreed, stating:

> The affidavit which supported the search warrant in this case contained the following relevant and supportive items of information: (1) a confidential informant had made at least six drug purchases, recorded by law enforcement officials, from Jones and a co-defendant; (2) on two occasions when the confidential informant was on the premises of Jones's residence while being monitored by audio surveillance, law enforcement officials heard a drug transaction; (3) in the 72 hours preceding the affidavit, the confidential informant was on the premises and observed Jones and a co-defendant in possession of a quantity of cocaine for the purpose of unlawful distribution.
>
> The district court did not err by finding that such information provided probable cause to support the warrant.

Id.

Similarly, in United States v. Blair, 214 F.3d 690 (6th Cir. 2000), the defendants argued that there was "no basis to conclude that records relating to [their] businesses would be found in their residence." Id. at 696.  The court of appeals disagreed, stating:

3

(5:06 CR 0162)

> Considering the totality of the circumstances, we find that Kraft's affidavit established probable cause for the issuance of the search warrant. Accordingly, the magistrate judge had a substantial basis to conclude that wrongdoing would be uncovered by the search. The affidavit provided information regarding Kraft's extensive experience in investigating the financial aspects of drug trafficking and his professional opinion that drug traffickers keep financial records at their homes. In addition, the affidavit provided information obtained from reliable cooperating witnesses and electric company records. This information was sufficient for the issuance of the search warrant in this case. See United States v. Jones, 159 F.3d 969, 975 (6th Cir.1998) (stating that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live").

Id.

In the instant case, the lengthy affidavit filed in support of the search warrant application set forth in great detail the agent's training, experience and knowledge, as well as the supporting information relating to his sources, numerous wiretaps, surveillance, and the like.

Of particular relevance to the instant motion are those portions of the affidavit which link Ali to a drug dealer by the name of Ronald Dede, also a defendant in this case. See, e.g., Aff. ¶¶ 6, 12, 16 (identifying Dede as a known seller and distributor of cocaine in the Canton area); Aff. ¶¶ 25-38 (chronicling Dede's methods of moving drugs in the Canton area); Aff. ¶¶ 39-40 (chronicling surveillance of Dede the day before his meeting with Ali); Aff. ¶ 41 (recounting surveillance of Ali meeting Dede on September 16, 2005). On two occasions, Ali was observed in two different vehicles registered to him at 6967 Deer Trail Ave., NE Canton, Ohio, his residence which was searched. (Aff. ¶ 41, 54). The affiant further attested that all information pertaining to vehicle registrations were obtained through the Law Enforcement Automated Data System (LEADS) or the National Crime Information Center (NCIC). (Aff. ¶ 9).

(5:06 CR 0162)

Ali argues that there was no actual observation of either him or any drug activity at the residence that was searched. He argues that "[t]here must . . . be a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir.) (internal quotation marks and citation omitted), cert. denied, 543 U.S. 851 (2004).

In Carpenter, the Sixth Circuit, sitting en banc, concluded that the mere fact that marijuana was growing near the defendants' residence and that there was a road nearby "f[e]ll short of establishing the required nexus between the Carpenters' residence and evidence of marijuana manufacturing." Id. The court, however, pointed out that if the "affidavit had stated that beaten paths led from the marijuana patches to the door of the residence, and that two men had been spotted walking from the marijuana patches to the residence, the affidavit would likely have been sufficient to establish probable cause." Id.[1] Carpenter is distinguishable because, obviously, the mere fact that marijuana is growing near a residence does not connect the marijuana to that residence or to the people living in that residence.

In the instant case, on one occasion Ali was observed driving a car registered in his name at the address of the residence that was searched. He met up with Dede, a known drug dealer, in the parking lot of a store. Ali exited his car and entered the vehicle driven by Dede, a vehicle

---

[1] In the end, Carpenter was decided on the basis of the good faith exception set forth in United States v. Leon, 468 U.S. 897, 922 (1984) (courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant").
Ali also relies on United States v. Washington, 380 F.3d 236 (6th Cir. 2004). There, the district court granted a motion to suppress and, on appeal, the Sixth Circuit "assume[d] without deciding that probable cause did not exist[,]" id. at 240, and then went on to apply the Leon good faith exception. Like Carpenter, this case was decided on the basis of the Leon exception and offer little support for Ali's argument about the lack of probable cause.

5

(5:06 CR 0162)

associated with documented drug activity which had been observed traveling to two known "stash houses." After about 20 minutes Ali exited Dede's car. (Aff. ¶ 41). On another occasion two months later, Ali was observed driving another car registered in his name at the address of the residence that was searched, again meeting up with Dede, who was again driving another car associated with drug activity. The two men engaged in activity between the two vehicles (involving open doors and open trunk lids) that clearly suggested a likely exchange of drugs. (Aff. ¶ 54).

Given the overall extensive factual background set forth in the affidavit, based on three years of investigation, clearly this is sufficient to connect Ali to the alleged conspiracy and to make his residence (proven by his vehicle registrations) a potential source of evidence of crimes.

Ali also argues that, as in United States v. Davidson, 936 F.2d 856 (6th Cir. 1991), at best the affidavit here merely creates a suspicion of illegal activity, which is not enough for a search warrant. However, in the face of the thorough affidavit in the instant case, Davidson offers little support because even that court pointed out that " 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " Id. at 849 (quoting Gates, 462 U.S. at 244 n.13). The affidavit here shows a substantial chance of criminal activity on the part of Ali.

Ali also cites United States v. Algie, 721 F.2d 1039 (6th Cir. 1984), where the Sixth Circuit reversed the denial of a motion to suppress, noting that "no demonstrable illegal activities were observed at Highland Security Corporation." Id. at 1042. Algie, however, is completely distinguishable. There, a pen register on a telephone at an apartment where illegal gambling

(5:06 CR 0162)

activities were known to be taking place, recorded 15 telephone calls placed to the telephone number registered to Highland Security Corporation. A search warrant for Highland was issued and federal officials seized a variety of gambling paraphernalia which resulted in Algie's indictment. The Sixth Circuit rejected the argument that the 15 calls revealed by the pen register were sufficient reason for a search warrant, since the pen register could only reveal the fact of the calls, not the content of any conversation. The court concluded that "the limited information obtained from the pen register in this instance is insufficient to convince a reasonably prudent person that contraband or evidence of a crime would be found of the premises." Id.

In the instant case, a definite connection was made between Ali and Dede, a known drug dealer. (See Aff. ¶ 41). Moreover, the affidavit showed that Dede was involved in a broad-ranging conspiracy to possess and distribute cocaine. In light of the extensive facts set forth in the affidavit, a reasonably prudent person could be convinced that Ali was involved in this conspiracy and that evidence of illegal activity might, therefore, be found at his residence.

The Court also rejects Ali's argument that there is nothing in the affidavit to suggest that the residence searched was his residence. He claims there was no surveillance that revealed any connection between his two vehicles and that residence or between him and that residence. The affidavit, however, suggests there was surveillance. Even absent surveillance, law enforcement records showed not one, but two, vehicles that Ali was seen driving which were registered to him

7

(5:06 CR 0162)

at that address. This is sufficient to establish that it was his residence and any reasonable person would think so.[2]

The Court concludes that the affidavit was sufficient to support a warrant for the search of 6967 Deer Trail NE, Canton, Ohio.

### B. The *Leon* Good Faith Exception

Even if the affidavit were to be found insufficient, the Court is of the view that the exception set forth in United States v. Leon, 468 U.S. 897, 922 (1984), would apply.

The Leon Court held that the Fourth Amendment's exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Leon, 468 U.S. at 905.

The Sixth Circuit has pointed out that the Leon good faith exception does not apply in the following four circumstances:

> 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005).

Here there is no evidence that Special Agent McMurtry "presented false or reckless statements to the magistrate judge . . . [or] that the magistrate judge acted merely as a rubber

---

[2] Furthermore, if it were not his residence, he would not even have standing to challenge the search.

(5:06 CR 0162)

stamp or that the warrant was facially deficient." United States v. Hython, 443 F.3d 480, 484 (6th Cir. 2006).

Therefore, the question is whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923. As acknowledged by counsel for Ali at the hearing, "[t]his is a less demanding showing that the 'substantial basis' threshold required to prove the existence of probable cause in the first place." Carpenter, 360 F.3d at 595 (quoting United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002)).

Ali points to United States v. Laughton, 409 F.3d 744 (6th Cir. 2004), which required a nexus between the residence to be searched and the criminal activity attributed to the defendant before reliance on the Leon exception could be sustained.

In Laughton, the Sixth Circuit rejected the argument that the affidavit submitted in support of the application for the search warrant would justify application of the Leon exception. It characterized the affidavit as the kind of so-called "bare bones" affidavit which is "so lacking in indicia of probable cause." Id. at 748 (citing United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996)).

The particular affidavit which was found lacking in Laughton had related the facts in four paragraphs as follows:

> Your Affiant, Det. Scott Clarke is employed by the Isabella County Sheriff Department and has been so employed for 4 years and is currently assigned to BAYANET [Bay Area Narcotics Enforcement Team] narcotics team. During the course of Affiant's police career he has received extensive training in all aspects of law enforcement, including criminal investigation in regard to controlled substances. Affiant is familiar with the appearance of methamphetamine.

(5:06 CR 0162)

>    Currently your Affiant is involved with ongoing drug investigations in Clare County. Through the course of this investigation, your Affiant has worked with a Confidential Informant (CI), who has made multiple purchases of Methamphetamine in the last 48 hours. Affiant has observed this controlled purchase.
>
>    Through the course of this investigation your Affiant has learned that James Howard Laughton will keep controlled substances/drugs in the crotch area of his pants and in his pants pockets. Further that there are various stashes around the home.
>
>    This CI is believed to be credible and reliable by the Affiant due to the fact that the CI has provided reliable information in the past which was corroborated by Affiant. CI has provided information that there is more controlled substances located at or in the residence or located on the person of James Howard Laughton due to the fact that he has observed these controlled substances.

Laughton, 409 F.3d at 746-47.

Clearly the affidavit attacked in Laughton bears no resemblance to the extensive fact-based affidavit in the instant case. Moreover, the Laughton court noted with disapproval the fact that the district court, in applying the Leon exception, had "explicitly considered not only what was in the affidavit, but also what other facts were known to the deputy but not included in the affidavit." Id. at 751. The court held that "a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." Id.

In this case, the affidavit is not "bare bones;" rather it sets forth in considerable detail facts underlying the Agent's belief that the defendants in this case, including Ali, were engaged in a drug conspiracy and were likely to have evidence of that fact in their homes.

Even though the nexus between Ali and criminal activity and Ali and the Deer Trail residence is not as strong as for other defendants in the case, what is required is "some modicum

(5:06 CR 0162)

of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." Laughton, 409 F.3d 749 (citing Washington, 380 F.3d at 242 (citing Carpenter, Van Shutters, Schultz, Savoca,)[3]).  That "modicum" certainly exists as to Ali.

Therefore, the Court concludes that, even if the affidavit were insufficient to establish probable cause, which the Court rejects, the Leon good faith exception would still apply.

## IV.  CONCLUSION

The Court concludes that the affidavit was sufficient to support the issuance of a search warrant for Ali's residence and that, in any event, the Leon good faith exception would apply.

Accordingly, Ali's motion to suppress (Doc. No. 69) is denied.

IT IS SO ORDERED.

  June 12, 2006                                     *s/ David D. Dowd, Jr.*
Date                                               David D. Dowd, Jr.
                                                           U.S. District Judge

---

[3] United States v. Carpenter, 360 F.3d 591 (6th Cir.2004) (en banc); United States v. Van Shutters, 163 F.3d 331 (6th Cir. 1998); United States v. Schultz, 14 F.3d 1093 (6th Cir. 1994); United States v. Savoca, 761 F.2d 292 (6th Cir. 1985).